23136

Emory MAIN, A. Dewall Waters, Partners, d/b/a M & W Partners, and Main Waters Advertising, Inc., Respondents v. SOUTH CAROLINA DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, Appellant.

(388 S. E. (2d) 792)

Supreme Court

*Michael S. O'Neal,* North Charleston, *for appellant.*

*J. Randolph Pelzer* of *Pelzer and Associates,* Charleston, *for respondents.*

Heard Dec. 8, 1989.

Decided Jan. 22, 1990.

CHANDLER, Justice:

South Carolina Department of Highways and Public Transportation (Dept.) appeals an Order requiring it to grant Respondents, Emory Main, et al, (M & W), access across an off-ramp of the Mark Clark Expressway (Expressway) in Charleston, South Carolina. We reverse.

## FACTS

In 1980, Dept. condemned a portion of property owned by Jackson and Mary Sue Carroll (the Carrolls) for the purpose of constructing the Expressway, a controlled-access Interstate Highway.[1] The portion not condemned was landlocked by the taking. The Carrolls received $40,000 in payment for the taking and damage to remainder.

In 1986, M & W purchased from the Carrolls the landlocked remainder, on which it planned to construct a billboard. Failing in efforts to purchase access to the parcel from an adjacent landowner, M & W sought permission from Dept. to cross the off-ramp. When permission was refused, this Mandamus action to compel Dept. to permit access was instituted. The Master, to whom the case was referred for final judgment, granted the Mandamus.

## ISSUE

Although several issues are raised, we address only whether Dept., in refusing access, failed to exercise the discretion vested in it by S. C. Code Ann. § 57-5-1040, as contended by M & W.

## DISCUSSION

Section 57-5-1040 reads:

> The Department *may* so design any controlled-access facility and so regulate or prohibit access as to best serve the traffic for which such facility is intended. No person shall have any right of ingress or egress to, from or across controlled-access facilities to or from abutting property or lands, except at such designated places at which access *may* be permitted, upon such terms and

---

[1] S. C. Code Ann. § 57-5-1010 (1976) defines a controlled-access facility as a State Highway especially designed for through traffic from or to which owners or occupants of abutting property shall have only a controlled right or easement of access.

conditions as may be specified from time to time by the Department. [Emphasis added.]

The statute clearly vests in Dept. the right to prohibit access to any controlled-access facility. In those instances in which Dept. permits access, the permission is given *only* "upon such terms" as Dept. specifies.

Dept.'s reasons for refusing access to fully controlled-access highways were testified to extensively by W. T. Young, its Director of Engineering.

Concerning safety:
Q. ... How does control of access make it safer for the motoring public?
A. It reduces the interference to the motorist utilizing the roadway, the main part of the roadway, per se.

\* \* \* \* \* \*

... We've determined over years of experience that freeways with absolute control of access have a safety record some two to four times better than conventional highways without these features.
Concerning traffic flow:
Q. How is traffic designed to flow on this Mark Clark expressway project?
A. It's designed to flow on the main line uninterrupted at higher speeds than it would be on a conventional roadway.
Q. Will pedestrians off the roadway, but on the right of way and vehicles that are not on the roadway but perhaps on the right of way disturb that free flow of traffic?
A. ... if they are in fact visible to the motoring public, they would interfere quite a bit because the motorist would not be aware of what the intention of this person would be and whether it would be entering the roadway or wouldn't be entering the roadway.

It is patent from the foregoing that Dept. did exercise its discretion. The Master erred in holding that Dept.'s refusal to grant M & W access was arbitrary and without factual basis.

Judgment is reversed and attorney's fees are disallowed.

Reversed.

GREGORY, C. J., and HARWELL, FINNEY and TOAL, JJ., concur.